**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON DERON,** | : | **No. 3:11cv1934** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **SG PRINTING, INC. and** | : | |
| **SYE GROSS,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Defendant Sye Gross and Defendant SG Printing, Inc. (collectively "defendants") move to dismiss Plaintiff Jason Deron's (hereinafter "plaintiff") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. (Doc. 11). This matter is briefed and ripe for disposition. For the following reasons, the court will deny defendants' motion to dismiss.

**Background**

The instant litigation arises from the dissolution of plaintiff's business relationship with his former employer, Defendant SG Printing, Inc. (hereinafter "SG Printing"), and its Chief Executive Officer, Defendant Sye Gross (hereinafter "Gross"). Specifically, plaintiff asserts, under several legal theories, that defendants owe him approximately $400,000 in unpaid wages. The facts as described in the amended complaint are summarized below.

Plaintiff served as the Vice President of Sales for North East Graphics from 2000 to 2003. (Doc. 9, Am. Compl. (hereinafter "A.C.") ¶ 6). North East Graphics was a financial and commercial book printing company located at

249 Roosevelt Highway in Waymart, Pennsylvania.  (Id.)  North East Graphics ceased operations in 2003 after the company's owner died.  (Id.)  SG Printing purchased the real property and equipment owned by North East Graphics in 2005, and SG Printing commenced operations as a graphics arts communication company at North East Graphic's former location.  (Id. ¶ 7).  As a graphic communications company, SG Printing engaged in "a full range of printing services for the financial and commercial book market."  (Id. ¶ 8).

### The Oral Employment Agreement

During the summer of 2005, Gross approached plaintiff regarding a sales position with SG Printing.  (Id. ¶ 9).  Plaintiff and Gross orally discussed an employment agreement, the terms of which provided that plaintiff will use his best efforts to do the following: "(a) sell the printing services offered by SG Printing, which included attempting to solicit the prior customers of North East Graphics; (b) engage in marketing efforts to increase SG Printing's presence in the marketplace; and (c) promote the general brand and services of the company."  (Id. ¶ 11).  The oral employment agreement provided that plaintiff would receive wages in the form of commissions based upon the gross amount of sales that he made.[1]  (Id. ¶ 12).  All commissions were "earned"

---

[1] Plaintiff alleges that his oral employment agreement provided that his commissions would be computed under the following schedule:

(a) five percent (5%) of gross amount of a sale whenever the markup price on the services provided was between fifteen percent (15%) and twenty percent (20%); (b) seven and one-half percent (7.5%) of the gross amount of a sale whenever the markup price on the services provided was between twenty

2

when SG Printing received payment for services rendered to plaintiff's customers. (Id. ¶ 14). The oral employment agreement provided that at the end of each calendar year, SG Printing would calculate the commissions plaintiff earned for that calendar year and make payments to plaintiff on such commissions during the following calendar year. (Id. ¶ 15). SG Printing agreed to pay plaintiff a salary, which essentially constituted of an advance on his future commissions, of $60,800 for his work from August 2005 to December 2005. (Id. ¶ 16). Consequentially, plaintiff's commissions payable in the year 2006 would be determined by his commissioned sales from August to December of 2005, less the $60,800 advance. (Id.)

The oral employment agreement also provided for reimbursement of reasonable business expenses. (Id. ¶¶ 17-18). Such business expenses included "(a) vehicle mileage; (b) tolls; (c) company cell phone usage; (d) internet access; (e) meals/client entertainment; (f) hotels; and (g) airfare." (Id. ¶ 17). Plaintiff was reimbursed at the end of the month for the previous months expenses. (Id. ¶ 18).

Plaintiff and Gross, on behalf of SG Printing, entered into the oral employment agreement described above during their meeting in the summer of 2005. (Id. ¶ 10). Plaintif commenced employment as SG Printing's Vice President of Sales in August 2005. (Id, ¶ 19).

_____

> percent (20%) and twenty-five percent (25%); and (c) ten percent
> (10%) of the gross amount of a sale whenever the markup price
> on the services provided was over twenty-five percent (25%).

(A.C. ¶ 13).

3

**Salary Paid and Commissions Earned from 2005 to 2011**

From August 2005 to December 2005, plaintiff made approximately $1,189,984 in sales for SG Printing.  (Id. ¶ 21).  Under the terms of the oral employment agreement, plaintiff earned approximately $103,567 in commissions at an effective commission rate of 8.7%.  (Id.)  Due to his $60,800 salary advance, SG Printing owed plaintiff $42,767 in commissions payable in 2006.  (Id. ¶ 22).  Recognizing that his commissioned sales would increase over the course of an entire year, Gross agreed to pay plaintiff $196,000 for the 2006 calendar year; a salary that amounted to a $153,233 advance on plaintiff's commissions earned in 2006 and payable in 2007.  (Id. ¶¶ 23-24).  Plaintiff further alleges that, "[b]eginning in 2006 and continuing for each year thereafter, SG Printing and Gross determined the weekly compensation that Deron would receive" and that "the amount of weekly payments made to Deron was based largely on the cash flow of the company."  (Id. ¶ 25).  The following chart represents the salary plaintiff received, the commissioned sales plaintiff made, the commissions plaintiff earned, and plaintiff's effective commission rate for the years 2005-2010.  (See id. ¶¶ 21-39).

4

| Year | Salary Paid | Commissioned Sales Made | Commissions Earned (Payable in the Next Year) | Effective Commission Rate |
|---|---|---|---|---|
| 2005 | $60,800 | $1,189,984 | $103,567 | 8.70% |
| 2006 | $196,000 | $3,134,952 | $270,783 | 8.63% |
| 2007 | $327,600 | $5,024,488 | $451,835 | 8.99% |
| 2008 | $390,000 | $5,575,771 | $465,232 | 8.34% |
| 2009 | $390,000 | $4,368,510 | $395,209 | 9.05% |
| 2010 | $390,000 | $4,935,403 | $441,610 | 8.95% |
| Total | $1,754,400 | $24,229,108 | $2,128,236 | |

As the chart above illustrates, SG Printing paid plaintiff a total of $1,754,400 from 2005-2010 and plaintiff earned $2,128,236 in commissions during that same period. Thus, going into the 2011 calendar year, SG Printing owed plaintiff $373,836 in unpaid commissions. (Id. ¶ 39). From January to June 2011, plaintiff made approximately $2,002,048 in sales and earned $200,412 in commissions under the oral employment agreement. (Id. ¶ 41). During the same period, SG Printing paid plaintiff $180,000, leaving plaintiff with approximately $394,248 in unpaid commissions by June 2011. (Id. ¶¶ 40, 49).

**Dissolution of Plaintiff's Business Relationship with Defendants**

On May 25, 2011, SG Printing issued plaintiff a paycheck for $5,323. (Doc. 9-1, Ex. A, 5/25/11 Paycheck). Approximately one week after presenting this check for payment, it was returned for insufficient funds. (A.C. ¶ 42). Plaintiff confronted Gross about the bounced May 25 check, and Gross represented that the next paycheck would have sufficient funds. (Id. ¶ 43). On June 1, 2011, SG Printing issued plaintiff another check for $5,323. (Doc.

5

9-2, Ex. B, 6/1/11 Paycheck).  Like his previous week's paycheck, the June 1

check was returned for insufficient funds.  (A.C. ¶ 44).  Gross again

represented that the next scheduled paycheck would be honored, and, as a

result of this reassurance, plaintiff continued to work.  (Id. ¶ 45).

SG Printing issued a $5,323 paycheck to plaintiff on June 8, 2011.

(Doc. 9-3, Ex. C, 6/8/11 Paycheck).  Like his previous two paychecks, the

June 8 check was dishonored for insufficient funds.  (A.C. ¶ 46).  During the

weeks prior to the June 8, 2011 payday, Gross repeatedly represented that

plaintiff would be paid despite the company's financial woes.  (Id. ¶ 47).

Gross shut down the business operations of SG Printing on June 11, 2011.

(Id. ¶ 48).

With respect to his business expenses, plaintiff alleges that in March

2011, Gross and SG Printing stopped reimbursing him for his business

related expenses.  (Id. ¶ 52).  Plaintiff alleges that SG Printing stopped

reimbursing him despite the fact that plaintiff complied with all relevant terms

of his oral employment agreement.  (Id. ¶¶ 50-52).  Plaintiff contends that

defendants owe him a total of $10,003 in business expenses that he incurred

in connection with his employment.  (Id. ¶ 53).  Plaintiff alleges that, at the

time Gross discontinued SG Printing, plaintiff was owed a total of $404,251 in

unpaid wages (the total unpaid wages is equivalent to the sum of $394,248 in

unpaid commissions and $10,003 in unpaid business expenses).  (Id. ¶ 54).

Plaintiff alleges that Gross controlled SG Printing as his alter ego.  (Id. ¶

69).  Gross denied the president of SG Printing the ability to write checks for

6

SG Printing.  (Id. ¶ 70).  Gross was the only policy maker with full check-writing authority for SG Printing.  (Id. ¶¶ 56, 68).  Although Gross represented that plaintiff would receive his unpaid wages, Gross nonetheless disregarded plaintiff's requests for the unpaid wages and decided that SG Printing would not pay plaintiff his unpaid wages.  (Id. ¶¶ 56-57).

In further support for the allegation that SG Printing served as his alter ego, plaintiff asserts that Gross commingled his personal funds with SG Printing funds.  (Id. ¶¶ 76-78).  This is supported by the allegation that, when SG Printing accounts were low, Gross paid employees via an electronic funds transfer from another source that he controlled.  (Id. ¶¶ 77-78).  Plaintiff contends that, despite the relative success SG Printing enjoyed, Gross's actions left SG Printing undercapitalized.  (Id. ¶¶ 72-75).  Moreover, plaintiff cannot plead with specificity the financial health of SG Printing because Gross prohibited anyone, including the President of SG Printing, from examining SG Printing's financial records.  (Id. ¶ 71).  Gross justified this policy on the grounds that SG Printing was "his company and he could run it the way he wanted without reproach."  (Id.)

Plaintiff filed the instant lawsuit on October 18, 2011.  (Doc. 1, Compl.). Defendants moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), and the court granted their motion, dismissing the complaint without prejudice.  (See Doc. 8, Mem. & Order dated May 25, 2011).  Plaintiff filed an amended complaint on June 13, 2012.  (See A.C.).  In his amended complaint, plaintiff claims relief under the Pennsylvania Wage

Payment and Collection Law, 43 PA. CONS. STAT. ANN. § 260, *et seq.*, and, alternatively, plaintiff asserts the right to damages equivalent to his unpaid wages under breach of contract and unjust enrichment theories of liability. Defendants filed another motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 11), bringing this case to its current posture.

## Jurisdiction

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a citizen of the state of New Jersey. (A.C. ¶ 1). Defendant SG Printing, Inc. is a Pennsylvania corporation with a principal place of business in Waymart, Pennsylvania. (Id. ¶ 2). Defendant Sye Gross is a citizen of the state of New York. (Id. ¶ 3). Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332. Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

## Standard of Review

When a 12(b)(6) motion is filed, the sufficiency of the complaint's allegations are tested. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503,

506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level."  McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations omitted).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Such "facial plausibility"

exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).  "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.  Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

Defendants seek dismissal of the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as a matter of law.  Although defendants' brief is not a model of clarity, it appears that defendants seek to advance four arguments in support of their contention that the amended complaint does not meet federal pleading standards.   In particular, defendants asserts the following: (1) the amended complaint does not adequately set forth the terms of the purported oral contract, (2) the amended

10

complaint does not adequately plead facts that qualify plaintiff as an employee under the Pennsylvania Wage Payment and Collection Law, (3) plaintiff has not pled what benefit he unjustly provided defendants and (4) plaintiff does not state facts to support piercing the corporate veil.  The court will assess the three counts of plaintiff's amended complaint as well as plaintiff's claim to pierce the corporate veil in light of defendants' arguments. As is discussed below, the court disagrees with all of defendants' contentions; thus, the motion to dismiss will be denied.

### 1. Breach of Contract

The amended complaint requests relief under the Pennsylvania Wage Payment and Collection Law in Count I, for breach of contract in Count II and under the theory of unjust enrichment in Count III.  The court will first assess plaintiff's second count and whether plaintiff stated a claim for a breach of contract in light of defendants' arguments to the contrary.

Under Pennsylvania law, parties asserting claims for a breach of an oral or express written contract must allege the following three elements to adequately state a claim: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages."  Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)); see also Mavrinac v. Emergency Med. Ass'n of Pittsburgh, No. 2:04-cv-1880, 2005 WL 2304995, at *8 (W.D. Pa. Sept. 21, 2005) (noting that to plead a breach of contract, "a plaintiff must assert the

existence of a valid and binding contract; that the plaintiff has complied with [the] contract by performing her own obligations under it; [that] all conditions precedent were fulfilled; [that] there was a breach of the contract; and [that] damages were incurred" (citing Pierce v. Montgomery Cnty. Opportunity Bd., Inc., 884 F. Supp. 965, 970 (E.D. Pa. 1995))).  Although every term of a contract need not be stated in complete detail, every element must be specifically pleaded.   Cutillo, 723 A.2d at 1058.  Clarity in the pleadings is "particularly important where an oral contract is alleged."  Pennsy Supply, Inc. v. Am. Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. Ct. 2006) (citing Snaith v. Snaith, 422 A.2d 1379, 1382 (Pa. Super. Ct. 1980)).

     In this case, the court finds that plaintiff sufficiently pled a breach of an oral contract.  First, plaintiff pled the existence of an oral employment contract and the essential terms of that agreement.  Plaintiff alleged what his duties and obligations were under his oral employment contract.   Plaintiff specifically pled that as Vice President of Sales from 2005-2011 his duties and obligations included selling SG Printing's services, soliciting his former clients, marketing and otherwise promoting SG Printing's services.  In addition to alleging his obligations under the oral contract, plaintiff set forth the compensation he was promised in consideration for his efforts–commission payments based on his gross sales.  Plaintiff alleged, in detail, the commission rate schedule provided by his oral employment contract.  Plaintiff pled that oral agreement provided that he would receive credit for sales once the company received payment for services rendered.  The oral employment

contract provided when plaintiff would be paid his commissions (in the next calendar year) in addition to when plaintiff would be reimbursed for business expenses (the month after he submitted expenses for reimbursement).

Second, plaintiff pled that defendants breached their obligations under the oral employment contract despite the fact that plaintiff fulfilled his duties. Plaintiff alleged that he discharged his duties and obligations under his oral employment contract from 2005-2011 and made a total of approximately $26,231,156 in sales for SG Printing. The amended complaint alleges that, under the commission schedule of the oral employment contract, plaintiff earned approximately $2,328,648 in commissions. Plaintiff avers that defendants breached the oral employment contract by not paying him a total of $404,251 in unpaid commission fees and unreimbursed business expenses. Third, plaintiff adequately pled damages, the final element required to plead a claim for breach of contract. Specifically, plaintiff suffered a $404,251 loss in income and unreimbursed business expenses, a sum that plaintiff claims he would have been paid had defendants not breached the oral employment contract.

Thus, given plaintiff's pleadings with respect to his duties as Vice President of Sales, the sales he made for SG Printing, the course of dealings between the parties under the alleged agreement, the alleged breach committed by defendants and the harm plaintiff suffered as a result of that breach, the court finds that plaintiff sufficiently pled the necessary elements of a breach of an oral contract under Pennsylvania law. Notwithstanding

13

defendants' vague assertions that plaintiff does not aver the existence of a contract, the court finds that plaintiff has met federal pleading standards with respect to his breach of contract claim.

### 2. Wage Payment & Collection Law

Count I of the amended complaint asserts that plaintiff is entitled to his unpaid wages, liquidated damages, attorneys' fees and costs pursuant to the Pennsylvania Wage Payment and Collection Law (hereinafter "WPCL"). Despite defendants' arguments concerning plaintiff's ineligibility to pursue a claim under the WPCL, the court finds that plaintiff has satisfied federal pleading requirements and that this claim can proceed to the next stage of the proceedings.

The WPCL provides that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer." 43 PA. CONS. STAT. ANN. § 260.3(a). For purposes of this law, employers include "every person, firm, partnership, association, cooperation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 PA. CONS. STAT. ANN. § 260.2a. The term "wage" is defined by the WPCL as "all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation." Id. The WPCL additionally confers onto employees the ability to institute legal actions to collect wages payable to them by employers. See 43 PA. CONS. STAT. ANN. § 260.9a; see

also Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997) ("The

Wage Payment and Collection Law provides employees a statutory remedy to

recover wages and other benefits that are contractually due to them.").

Courts interpreting Pennsylvania law within the Third Judicial Circuit

have found that "'a prerequisite for relief under the WPCL is a contract

between employee and employer that sets forth their agreement on wages to

be paid. . . . Relief under the WPCL is implausible without [the] existence of a

contract.'" Scott v. Bimbo Bakeries, USA, Inc., No. 10-3154, 2012 WL

645905, at *4 (E.D. Pa. Feb. 29, 2012) (quoting Lehman v. Legg Mason, Inc.,

532 F. Supp. 2d 726, 733 (M.D. Pa. 2007)); see also Divenuta v. Bilcare, Inc.,

No. 09-3657, 2011 WL 1196703, at *9 (E.D. Pa. Mar. 30, 2011) (noting that

"to sustain his wage-payment claims, [the plaintiff] must demonstrate that he

was contractually entitled to compensation and that he was not paid" (citing

Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct.

2005))).  "The 'WPCL does not create a right to compensation.  Rather, it

provides a statutory remedy when the employer breaches a contractual

obligation to pay earned wages.  The contract between the parties governs in

determining whether specific wages are earned.'" Scott, 2012 WL 645905, at

*4 (internal quotations omitted).

Defendants advance two arguments that touch on plaintiff's WPCL

claim.  First, defendants assert that plaintiff has not pled sufficient facts to

satisfy federal pleading standards with respect to the existence of an oral

employment contract.  Defendants conclude that the WPCL claim fails as a

15

matter of law in the absence of such a contract.  Second, defendants argue that plaintiff does not allege facts to support the reasonable inference that he qualified as an "employee" under the WPCL.  The court finds neither argument convincing.

As is fully explained above, plaintiff adequately states a claim for a breach of contract.  Plaintiff alleges the pertinent terms of the oral employment agreement, that he fulfilled his obligations under the agreement and that he was damaged by defendants' failure to fulfill their obligations under the agreement.  Therefore, on the face of the pleadings, plaintiff qualifies for the statutory remedy provided by the WPCL.

With respect to defendants' second argument that touches on the WPCL claim, the court finds that plaintiff alleged facts that lead to the reasonable inference that he qualifies as an employee under the WPCL. Courts have held that to succeed in a WPCL claim the plaintiff must be an "employee" covered by the law.  McGoldrick v. Trueposition, Inc., 623 F. Supp. 2d 619, 628 (E.D. Pa. 2009); see also Spyridakis v. Riesling Grp., Inc., 398 F. App'x 793, 798 (3d Cir. 2010) ("The WPCL applies only to employees, not to independent contractors." (citing Morin v. Brassington, 871 A.2d 844, 850 (Pa. Super. Ct. 2005))).

Notwithstanding this requirement, the WPCL provides no official definition of "employee."  In the absence of an official definition, Pennsylvania courts rely on the rules of statutory construction and turn to the definition of "employee" found in the Pennsylvania Unemployment Compensation Act and

16

the Pennsylvania Worker's Compensation Act because, "'these statutes, like the WPCL, concern compensation for employees and, therefore, provide a more similar context.'"  Morin, 871 A.2d at 849 (quoting Frank Burns, Inc. v. Interdigital Commc'ns Corp., 704 A.2d 678, 680 (Pa. Super. Ct. 1997)). Accordingly, courts in the Pennsylvania have turned to the following factors to determine whether an individual is an employee or independent contractor under the WPCL:

> the control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer, and the right to terminate the employment at any time.

Inoff v. Craftex Mills, Inc., No. 06-3675, 2007 WL 4355385, at *11 (E.D. Pa. 2007) (quoting Surowski v. Commonwealth, 467 A.2d 1373, 1374 (Pa. Commw. Ct. 1983)).  The most important of these factors, for our purposes, "is the right of an individual to control the manner that another's work is to be accomplished."  Morin, 871 A.2d at 850 (citing Lynch v. WCAB, 554 A.2d 159, 160 (Pa. Commw. Ct. 1989)).

In the instant case, plaintiff has pled sufficient facts to lead to the reasonable inference that plaintiff served as an employee of SG Printing, not as an independent contractor as defendants contend.  Plaintiff alleges that the parties agreed to an employment contract in which plaintiff would serve as defendants' Vice President of Sales.  Plaintiff avers that he served in this position for six years; he does not insinuate that he was some kind of

17

independent contractor with a meaningless title as defendants argue. Moreover, it can be reasonably inferred from the amended complaint that plaintiff's function as the chief salesperson for the company was integral in the company's business, and, that in such a capacity, plaintiff served under the direction and supervision of Gross, SG Printing's CEO.  Therefore, ample allegations support the reasonable inference that plaintiff served as an employee and not as an independent contractor, and, at this stage in the litigation, the court can identify no reasonable basis to hold otherwise.  The court will thus deny the motion to dismiss with regard to Count I.

### 3.  Unjust Enrichment

Count III of the amended complaint seeks to impose liability on defendants under the theory of unjust enrichment.  Defendants argue that plaintiff's fail to state an unjust enrichment claim as a matter of law.  The court disagrees and finds that plaintiff satisfied federal pleadings standards with respect to the third count of their amended complaint.

Pennsylvania courts have held that "'[u]njust enrichment' is essentially an equitable doctrine."  Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  In Pennsylvania, a party seeking to plead unjust enrichment must allege the following elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" Giordano v. Claudio, 714 F. Supp. 2d 508, 530

18

(E.D. Pa. 2010) (quoting <u>Filippi v. City of Erie</u>, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009)).  Under these circumstances, "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant."  <u>Styer</u>, 619 A.2d at 350.  The existence of such a contract "requires that the defendant pay the plaintiff the value of the benefits conferred . . . ."  <u>Id.</u>

        Defendants contend that plaintiff failed to allege the "benefit" that was conferred to the defendant.  Defendant supports this contention with the following argument: "The complaint bases the damages he claims on some form of any precise commission basis.  *By its very terms the amended complaint must state the sales generated, the commission earned or believed to have been earned to establish some form of 'benefit'* and a factual basis to permit a conclusion to be reached that he (Deron) was actually an employee." (Doc. 12, Mem. of Law of the Def. in Supp. of the Mot. to Dismiss at 8) (emphasis added).

        A plain reading of the amended complaint reveals that it satisfies the very standard defendant articulates.  Plaintiff sold $6,937,451 in services for SG Printing in 2010 and 2011 and earned $642,022 in commissions.  Plaintiff further alleges that of his 2010-2011 commissions, he was only paid $247,774, leaving defendants with the benefit of not paying plaintiff approximately $394,248 in commissions defendant allegedly owed to plaintiff under the employment agreement.  Thus, plaintiff alleged the commissions he believed to be earned and owed to him, precisely what defendants contend

plaintiff must do to establish a benefit.

In light of plaintiff's allegation that he conferred this alleged benefit to defendants, that defendants appreciated this benefit, and that defendants' retention of this benefit is inequitable under the circumstances, the court finds that plaintiff states a prima facie case of unjust enrichment.  Defendants' arguments on this point are rejected.

### 4.  Claims Against Defendant Gross in his Individual Capacity

In all three counts of the amended complaint, plaintiff seeks to hold both SG Printing, his former employer, and Gross liable.  Defendants protest and assert the following:

> The amended complaint of Mr. Deron merely recited formulaic language in an effort to establish a basis to pierce the corporate veil.  In their second shot at this there has been no material factual basis set forth for the relief sought.  The mere recitation of inadequate capitalization in several formats without a factual basis is inadequate.  The more (sic) repetition of these averments does not make them factual nor does it vest them with merit.

(Doc. 12, Mem. of Law of the Def. in Supp. of the Mot. to Dismiss at 6).

Defendants' argument, which cites neither the facts nor the law, is unconvincing.  For the following reasons, the court will allow plaintiff to proceed with his individual claims against Gross.[2]

_____

[2] The court notes that Gross, as an officer of SG Printing, falls under the WPCL definition of "employer."  See 43 PA. CONS. STAT. ANN. § 260.2a. "Employers" are liable for WPCL violations, and, in this case, plaintiff need not pierce the corporate veil to hold Gross liable for the alleged WPCL violation. See 43 PA. CONS. STAT. ANN. §§ 260.3(a), 260.9a.  In light of this consideration and the fact that defendant appears to only contest Gross's personal liability under the veil piercing doctrine, this section will focus on plaintiff's claim that the court should pierce the corporate veil to hold Gross

In Pennsylvania, "a corporation . . . is normally regarded as a legal entity separate and distinct from its shareholders." Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978); see also Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc., 360 A.2d 200, 207 (Pa. 1976) (noting that a corporation with a single shareholder can be an independent entity); Advanced Tele. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) ("the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person").  As such, "there is a strong presumption in Pennsylvania against piercing the corporate veil." Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995) (citing Wedner v. Unemp't Bd., 296 A.2d 792, 794 (Pa. 1972)).

Despite the strong presumption against looking beyond the corporate form, the court will pierce the corporate veil and hold the owner of a corporation liable "'when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'" Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001) (quoting Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir. 1967)); see also Ashley, 393 A.2d at 641 ("whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interest, the fiction of the separate corporate identity may properly be disregarded.").  Courts apply the alter ego doctrine to determine whether equity requires the court to pierce the corporate veil.  The alter ego

---

personally liable for plaintiff's contract law claims.

doctrine is "not applied by a test, but by consideration of relevant 'factors . . . [to determine] whether the debtor corporation is little more than a legal fiction.'"  Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 197 (3d Cir. 2003) (quoting Pearson, 247 F.3d at 484-85).  The Third Circuit alter ego doctrine precedent directs district courts to weigh the following factors:  "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder."  Pearson, 247 F.3d at 484-85 (citing Am. Bell Inc.v. Fed'n of Tel. Workers of Pa., 736 F.2d 879, 886 (3d Cir. 1984)).

A balance of the alter ego doctrine factors in the instant case reveal that plaintiff sufficiently stated a claim to pierce the corporate veil.  The amended complaint alleges that Gross controlled SG Printing in a manner to unjustly compensate himself, leading to the inference that Gross siphoned funds from the company.  The inference that Gross siphoned money from SG Printing and used the company as a facade is further supported by the allegations that Gross commingled his personal funds with those of SG Printing.  SG Printing did not observe typical corporate formalities, and the amended complaint maintains that Gross installed a straw man president who did not have payroll policy-making power.  Despite its consistent sales, the amended complaint asserts that SG Printing was undercapitalized.  It would be reasonable to infer

from the amended complaint's allegations that SG Printing's chronic undercapitalization and subsequent insolvency is attributable to Gross's alleged malfeasance.

The court finds that the facts alleged in the amended complaint amount to more than a mere formulaic recitation, and these facts, when accepted as true, favor holding Gross personally liable pursuant to the alter ego doctrine. Furthermore, given Gross's longstanding resistance to disclosing SG Printing's corporate records, one could reasonably infer that discovery will further reveal evidence that favors piercing SG Printing's corporate veil. Therefore, the individual claims against Gross shall proceed to the next stage of this litigation.

**Conclusion**

For the reasons discussed above, the court will dismiss defendants' motion to dismiss in its entirety.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES DERON,** | : | **No. 3:11cv1934** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **SG PRINTING, INC. and** | : | |
| **SYE GROSS,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 4th day of September 2012, Defendant SG Printing and Defendant Sye Gross's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 11) is hereby **DENIED**.

                              **BY THE COURT:**


                               s/ James M. Munley
                              **JUDGE JAMES M. MUNLEY**
                              **United States District Court**

24